| | | |
|---|---|---|
| JOSE MORENO-AZUA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). Also pending is Petitioner's Motion to Amend/Correct Motion to Vacate, (Doc. No. 7).

## I.    BACKGROUND

In October 2011, law enforcement agencies began investigating a drug-trafficking organization, the Azua Organization, suspected of smuggling large quantities of cocaine from Mexico, through Texas, to Charlotte, North Carolina. (Crim. Case No. 3:11-cr-386-FDW-DSC-1, Doc. No. 135 at ¶ 5: PSR). Following surveillance of Petitioner Jose Moreno-Azua; his son, Jose Fernando-Azua (Fernando); and Yoel Jimenez, officers initiated a traffic stop of the vehicle Fernando was driving and arrested him on an outstanding warrant. (Id. at ¶¶ 6-7). Agents searched Fernando's residence and a minivan parked at the residence and found nine kilograms of cocaine hidden in the minivan's bumper. (Id. at ¶¶ 8-9). Petitioner, Fernando, and Jimenez were charged with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. (Id., Doc. No. 42: Sealed Superseding

Indictment).  Fernando; his girlfriend, Amber Griffin; and his friend, Mashari Graham were

charged in Count Two of the indictment with conspiracy to distribute and to possess with intent

to distribute 500 grams or more of cocaine.  (Id.).  The Government filed a notice of

enhancement pursuant to 21 U.S.C. § 851, citing Petitioner's prior 1994 and 1996 Texas state

convictions for felony possession of a controlled substance.  (Id., Doc. No. 63: Information

Pursuant to 21 U.S.C. § 851).

Attorney Randolph Marshall Lee was appointed to represent Petitioner.  (Id., Doc. No.

12).  Eight months later, Petitioner filed a pro se letter with the Court, requesting a new attorney.

(Id., Doc. No. 74).  Petitioner stated that he had not seen his counsel in six months, counsel had

not gone over his case with him, and counsel had not answered the questions Petitioner had

written to him.  (Id.).  He asserted that counsel was only communicating with him via mail, that

counsel had not shown him discovery, and that counsel had not filed any pre-trial motions.  (Id.).

Petitioner also contended that counsel was trying to "make his job easier" by getting Petitioner to

plead guilty and cooperate and that by doing so the Government would dismiss one prior

conviction, which would lead to a plea offer of 20 years.  (Id. at 1).  Petitioner indicated that if he

did not cooperate, the offer was 20 years to life.  (Id. at 2).  Petitioner stated that he needed to

obtain new counsel so he could have the sentence enhancement dropped, arguing that he only

had one prior conviction because his sentences on the two charges had run concurrently.  (Id.).

Fernando, Griffin, and Graham pleaded guilty.  Petitioner and Jimenez were tried

together.  At trial, Graham testified that in October 2011, Petitioner agreed to sell ten kilograms

of cocaine to him.  (Id., Doc. No. 179 at 27-29; 43: Trial Tr. VII).[1]  Graham planned to convert

---

[1]  Because each volume of the trial transcript is numbered individually, the transcript is referred
to by volume number: Trial Tr. I is Doc. No. 175; Trial Tr. II is Doc. No. 176; Trial Tr. III is

the cocaine into crack for distribution. (Id. at 24-25). After making the agreement, Petitioner and Graham called each other numerous times. (Id. at 29). Meanwhile, Jimenez paid $350 for a red Honda Odyssey minivan, which was transported from Memphis, Tennessee, to an auction house in Houston, Texas. (Id., Doc. No. 176 at 31; 34-40: Trial Tr. II). On October 29th, Jimenez hired a trucking company to haul the minivan from Webster, Texas, to Fernando's residence in North Carolina. (Id. at 65; 68-72). When Jimenez and another person met the trucking company's driver, Jimenez told the driver he would fly to Charlotte and pay him on delivery. (Id. at 80). When the driver attempted to inspect the minivan, Jimenez or his partner stated that an inspection was not necessary. (Id. at 77-78; 96). During the three-day period that the driver had the van, Jimenez called him four to five times. (Id. at 81; 101).

On October 31, 2011, Jimenez flew from Houston to Charlotte under the name Emanuel B. Fortes. (Id., Doc. No. 177 at 31; 35-36: Trial Tr. III). He was scheduled to fly back to Houston the following day. (Id. at 36). Petitioner called Graham to inquire about obtaining a rental car so he could pick up a man at the airport who would check the quality of the cocaine. (Id., Doc. No. 179 at 32-35: Trial Tr. VII). Later that day Griffin, driving a Honda Civic, dropped Petitioner and Fernando off at a rental car agency near the Charlotte airport. (Id., Doc. No. 179 at 88-89: Trial Tr. VII). Department of Homeland Security Investigations ("HSI") agents followed the two men. (Id., Doc. No. 177 at 46-47; 49-50: Trial Tr. III). Petitioner rented a gold Chevy Malibu. (Id. at 24-27).

Petitioner, with Fernando as a passenger, drove the rental car to the airport, where Petitioner went into the terminal and met Jimenez, while Fernando drove the rental car around

Doc. No. 177; Trial Tr. IV is Doc. No. 190; Trial Tr. V is Doc. No. 178; Trial Tr. VI is Doc. No. 191; Trial Tr. VII is Doc. No. 179; and Trial Tr. VIII is Doc. No. 180.

the airport. (Id. at 53; 79; Doc. No. 179 at 90-91: Trial Tr. VII). After Fernando picked the two men up, they went to a restaurant and then eventually drove back to Fernando's residence. (Id., Doc. No. 177 at 53-54: Trial Tr. III; Doc. No. 179 at 94; 107: Trial Tr. VII). Around 6 p.m., Griffin returned to the residence in the Civic, but left in the rental car a short time later. (Id., Doc. No. 179 at 108). Approximately an hour-and-a-half later, the trucking company driver delivered the minivan to Jimenez, who was standing outside Fernando's residence. (Id., Doc. No. 176 at 85: Trial Tr. II; Doc. No. 177 at 81: Trial Tr. III; Doc. No. 179 at 109: Trial Tr. VII). Jimenez paid the driver in cash. (Id., Doc. No. 176 at 80: Trial Tr. II). Petitioner or Fernando took one kilogram of cocaine from the minivan and put it inside a Rice Krispies cereal box in the kitchen. (Id., Doc. No. 191 at 29; 44-45: Trial Tr. VI). Afterwards, Fernando called Graham and told him to come to the house because everything was there. (Id., Doc. No. 179 at 35-37: Trial Tr. VII). Petitioner texted Graham the address of Fernando's residence, but Graham's cell phone died before he was able to locate the house. (Id. at 36-37).

Later that evening, Fernando, Petitioner, and Jimenez left the house in the Civic and took a circuitous route to a nearby car wash. (Id., Doc. No. 177 at 60; 92: Trial Tr. III; Doc. No. 179 at 115-19: Trial Tr. VII). There, Fernando, who was driving, dropped a white grocery bag into a garbage bin. (Id. at 119; Doc No. 177 at 100: Trial Tr. III). After the Civic left, an HSI agent retrieved the bag and found packaging material consistent with kilogram quantities of cocaine inside. (Id. at 103-13; Doc. No. 179 at 120: Trial Tr. VII). The wrappings included what appeared to be residue from the cocaine. (Id.). Based on this information, as well as the fact that Fernando had outstanding probation violation warrants, HSI Agent Ubaldo Rios instructed other members of his team to stop the Civic and to arrest Fernando. (Id., Doc. No. 179 at 120: Trial Tr. VII). When Rios arrived at the stop, he arrested Fernando, and placed him in the patrol car.

(Id. at 123). Rios then spoke with Petitioner, who falsely stated that he had come from his house in Gastonia and denied knowledge of the minivan at his son's residence. (Id. at 123-24). When a key fob, which was later discovered to be for the minivan, was found on Petitioner, he said that he had found it. (Id., Doc. No. 190 at 104-05: Trial Tr. IV).

Rios interviewed Jimenez, who identified himself as Emanuel Berrios Fortes. (Id., Doc. No. 179 at 125: Trial Tr. VII). Jimenez also denied knowledge of the minivan. (Id. at 127-28). When Rios said that he had seen Jimenez take delivery of the minivan at Fernando's residence, Jimenez started to shake and then collapsed temporarily. (Id. at 128). During another traffic stop in August 2011, Jimenez also fainted when police officers seized cocaine hidden in a car in which he was a passenger.[2] (Id., Doc. No. 178 at 113; 122; 125; 132-35: Trial Tr. V). Agents searched the Civic, and recovered a black cell phone from where Jimenez had been sitting in the vehicle and a black backpack that belonged to Jimenez. Another cell phone was recovered from his person. (Id., Doc. No. 179 at 129: Trial Tr. VII).

Agents proceeded to Fernando's residence, transporting Petitioner and Jimenez in their patrol cars. Griffin granted consent to search the Stonehaven Drive residence. (Id., Doc. No. 177 at 122-25: Trial Tr. III; Doc. No. 191 at 96-97: Trial Tr. VI). Although no drugs or money were found, agents seized a digital scale, cellophane wrappers, and a paint can and bleach bottle that were hollowed-out to conceal items such as money or drugs. (Id., Doc. No. 179 at 156-75: Trial Tr. VII). A drug dog alerted to the minivan. (Id., Doc. No. 190 at 108-09: Trial Tr. IV). An agent then used the key fob found in Petitioner's pocket to open the minivan. (Id. at 111-12). Agents attempted to look in the vehicle but, because it was dark, they decided to take the

---

[2] This Court gave a limiting instruction when this evidence was admitted. See (Id., Doc. No. 178 at 109-11: Trial Tr. V).

minivan to a local police station for a full search.  (Id. at 114-15).  Agents found nine kilogram packages of cocaine inside the minivan's door panels.  (Id. at 120-21; Doc. No. 178 at 75-77: Trial Tr. V).  That evening, Griffin called Graham to tell him about the arrests.  (Id., Doc. No. 179 at 38-39: Trial Tr. VII).  Graham gave her bail money for Fernando.  (Id. at 39).  Later, they returned to Fernando's house, and Fernando took the kilogram of cocaine from the cereal box and delivered it to Graham.  (Id., Doc. No. 191 at 99-101).

While incarcerated, Petitioner spoke with his girlfriend, Francis, and Fernando.  Using code and speaking in both English and Spanish, Petitioner spoke about off-loading furniture, nine gallons of "paint," and eating the "Rice Krispies."  (Id., Doc. No. 179 at 189-97: Trial Tr. VII).  Fernando told his father that Ra, a nickname for Graham, was going to pay him for the Rice Krispies.  (Id. at 201).  They also discussed the price.  Petitioner and Griffin also spoke by phone and discussed Graham's arrest.  (Id., Doc. No. 191 at 106-10: Trial Tr. VI).  Petitioner told inmate Xavier Hardin that a van containing ten kilograms of cocaine was towed from Texas by car transport, that the man who arranged for the van flew to Charlotte, and that one kilogram of cocaine from the van was concealed in a cereal box.  (Id., Doc. No. 191 at 28-29; 44-47: Trial Tr. VI).  Hardin testified that Petitioner also told him that Graham owed him money for some drugs. (Id. at 46).  In addition to witness testimony, phone records, audio tapes of calls from jail, and videotapes of Petitioner and Jimenez were admitted.  Phone records showed that between October 25, 2011 and October 31, 2011, Petitioner and Jimenez made a total of thirty-two phone calls to each other.  (Id., Doc. No. 179 at 153: Trial Tr. VII).  Between October 11, 2011 and October 31, 2011, Petitioner and Graham made a total of 80 calls to each other.  (Id.).

On cross-examination of Rios and over the Government's objection, defense counsel solicited the fact that surveillance had begun after Rios received information from a confidential

source that the Azuas were engaged in drug trafficking. (Id., Doc. No. 179 at 247: Trial Tr. VII).

Neither Petitioner nor Jimenez testified or presented any evidence. In light of the decision in

Lafler v. Cooper, 132 S. Ct. 1376 (2012), during trial this Court questioned Petitioner regarding

the plea offer that was made to him. (Id., Doc. No. 179 at 7-11: Trial Tr. VII). Petitioner stated

that his attorney Lee fully explained the plea offer, that he was not coerced either to accept it or

to reject it, that he voluntarily chose to reject it, and that he could not cooperate because he did

not know anything about the offense. (Id. at 9-11). Before testimony from the Government's

final witness, Petitioner requested time to speak with his attorney, who relayed that he first

requested to take the plea deal for 20 years to life, but then changed his mind and stated that he

wished to proceed with the trial. (Id. at 77-78). The Government did not agree to re-extend the

prior plea offer, and Petitioner rejected entering a straight-up plea, again asserting that he did not

know anything about the offense. (Id. at 78-84).

     The jury convicted Petitioner and Jimenez of conspiracy to possess with intent to

distribute five kilograms or more of a mixture or substance containing cocaine. (Id., Doc. No.

98: Jury Verdict). The probation officer prepared a presentence report, calculating Petitioner's

criminal history category as VI, and recommending the mandatory statutory term of life

imprisonment. (Id., Doc. No. 124 at ¶¶ 37; 57-58: PSR).

     In September 2013, Petitioner filed a pro se letter with the Court seeking to have a new

attorney appointed to represent him at sentencing. (Id., Doc. No. 132). At a hearing on the

motion, Petitioner stated that he had a hard time contacting his attorney, that his son had written

a letter stating that Petitioner was not involved in the conspiracy, and that Petitioner did not

know why he should have pleaded guilty when he was told he was going home. (Id., Doc. No.

170 at 4). Attorney Lee stated that Fernando's counsel was opposed to having Fernando testify

at trial and, given his prior drug convictions, Fernando's testimony likely would have been more probative for the Government than for the defense. (Id. at 5). The Court denied the motion, finding that Petitioner had not established cause and that it would disadvantage him to have another attorney appointed at this point in the proceedings. (Id. at 7). Petitioner objected to the § 851 enhancement and the PSR. (Id., Doc. No. 135 at 17-18; PSR Addendum). This Court overruled the objections and imposed the statutorily required sentence of life imprisonment, noting that it was an appropriate sentence even if it had not been mandated by statute. See (Doc. No. 171 at 41: Sent. Tr.).

Petitioner appealed, arguing that his right to due process was violated when the prosecutor denied "his mid-trial request to accept a pre-trial plea offer," and that this Court erred in determining that his prior convictions involved separate criminal conduct. United States v. Moreno-Azua, 598 F. App'x 150 (4th Cir. 2015). The Fourth Circuit affirmed. Id. On December 4, 2015, Petitioner timely filed the present § 2255 motion, arguing that he received ineffective assistance of counsel; the indictment was defective; the evidence was insufficient to convict him; his Fourth Amendment rights were violated; this Court erred by failing to hold an inquiry of counsel hearing; and his sentence should be reduced under Amendment 782 to the United States Sentencing Guidelines. (Doc. No. 1). He has also filed two letters and a motion requesting leave to amend his motion to vacate. (Doc. Nos. 3; 4; 7).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the

arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A.  Petitioner's Motion to Amend the Motion to Vacate

The Court first considers Petitioner's motion to amend the motion to vacate.  The amendment of a § 2255 motion is governed by Rule 15 of the Federal Rules of Civil Procedure. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000).  Under Rule 15, "leave should be freely granted, and should be denied only where 'good reason exists . . . , such as prejudice to the defendants.'"  Id. (quoting Walker v. United Parcel Serv., 240 F.3d 1268, 1278 (10th Cir. 2001)).  Leave to amend should also be denied when the amendment would be futile.  Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

Petitioner has not attached a proposed amended motion to his motion to amend, nor has he indicated what claims or arguments he intends to make in the amended motion to vacate. Rather, he merely acknowledges in the motion to amend that his original motion to vacate was extremely lengthy (135 pages), and he states that he wishes to "be allowed to properly ascertain the process of my [motion to vacate] and amend such motion."  (Doc. No. 7 at 2).  The Court will deny Petitioner's motion to amend, as Petitioner has already filed an extensive motion to vacate, and he has not filed a proposed amended motion to vacate with his motion for leave to amend, detailing what additional claims he would like to present to this Court.

### B. Petitioner's Claims of Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish

deficient performance by counsel and, second, that the deficient performance prejudiced him.

See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Petitioner's ineffective assistance claims may be grouped into five grounds: (1) inadequate pre-trial investigation and communication; (2) failure to file a motion to suppress; (3) lackluster performance at trial; (4) failure to argue a confrontation clause violation on the ground that the Government used a confidential informant to initiate its case and that Petitioner should have been allowed to cross-examine this accuser; and (5) failure to file a motion to sever Petitioner's trial from that of his co-defendant Jimenez.  The Court will address each claim in turn.

1.  Petitioner's contention that counsel was ineffective for failing to adequately investigate and communicate with Petitioner.

Petitioner first argues that he received ineffective assistance of counsel because he had a breakdown in communication with his attorney Randolph Lee.  (Doc. No. 1-1 at 14-23; 98-99;

112-15; Doc. No. 1-2 at 1-18).  In particular, he contends that Lee failed to: conduct an adequate pretrial investigation, including going over the case with Petitioner; show him discovery; communicate with him in person or answer his questions when he wrote to Lee; frame an effective defense strategy; or inform the Court of the breakdown in the attorney-client relationship.  (Doc. No. 1-1 at 15-16; 18-19; 114-15; Doc. No. 1-2 at 1-2).  Petitioner also asserts that counsel originally advised him that the Government did not have a case, but then pressured him to plead guilty or to cooperate "without justifying his position."  (Doc. No. 1-1 at 15; 19).  Petitioner argues that counsel did not discuss how his punishment might vary between going to trial and pleading guilty.  (Id. at 19).  He contends that counsel did not allow him to participate in formulating his defense or any trial strategies.  (Id. at 101).  Finally, he asserts that counsel failed to obtain facts relevant to his defense that were known only to Petitioner.  (Id. at 23; 116).

Petitioner's allegations of ineffective assistance based on counsel's alleged failure to adequately investigate and communicate with Petitioner will be dismissed as conclusory.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013).  Despite claiming that he, himself, had knowledge of facts relevant to his defense, Petitioner does not identify any facts that additional investigation would have revealed, nor does he indicate what defense strategy counsel could have employed that would have been successful.  Although he asserts that counsel failed to communicate with him, he makes no showing of how additional communication could have changed the outcome at trial.

Petitioner also does not allege that, but for counsel's actions, he would have pleaded guilty.  Indeed, any such allegation would contradict his statements to the Court that he did not have knowledge of the offense and that he wished to proceed to trial.  Petitioner's July 2012 letter to the Court and his discussion during trial of the plea offer both indicate that he was aware

that he faced a sentence of life imprisonment and that he had not been coerced to accept or reject the plea offer.  See (Crim. Case No. 3:11-cr-386-FDW-DSC-1, Doc. No. 179 at 7-11; Trial Tr. VII; Doc. No. 74: July 25, 2012, Letter from Petitioner).  Accordingly, because Petitioner has made no showing that, but for counsel's conduct the result of the proceeding would have been different, he has not met his burden to show prejudice.  See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (holding petitioner could not establish ineffective assistance based on failure to investigate and call additional witnesses where he did not set forth what an adequate investigation would have revealed).  Because Petitioner has not shown prejudice, his claim of ineffective assistance of counsel alleging inadequate investigation and communication is denied.

2.  Petitioner's contention that counsel was ineffective for failing to file a motion to suppress.

To establish ineffective assistance based on counsel's failure to file a motion to suppress, a defendant must show both deficient performance and prejudice.  There is no deficient performance where counsel's determination not to litigate a motion to suppress is reasonable.  See Walker v. United States, Civil No. RWT-14-0536, 2015 WL 4638069, at *2 (D. Md. July 31, 2015) (unpublished).  Further, a petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence."  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).  The Fourth Amendment prohibits only unreasonable searches and seizures.  United States v. Sharpe, 470 U.S. 675, 682-83 (1985).  Courts consider the totality of the circumstances in determining whether reasonable suspicion or probable cause exists to effectuate a stop.  United States v. Arvizu, 534 U.S. 266, 273 (2002).  To conduct an investigatory stop, officers "must be able to point to specific and articulable facts which, taken

together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). To establish probable cause for an arrest, the facts and circumstances must be "sufficient to warrant a prudent person" to believe "that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

Petitioner argues that counsel provided ineffective assistance by failing to file any pre-trial motions. Specifically, he asserts that counsel should have moved to suppress the evidence obtained during the traffic stop, his custodial arrest, and the later search of the minivan and house. (Doc. No. 1-1 at 69; 78-80; 99; Doc. No. 1-2 at 3-5). Petitioner argues that he had a legitimate expectation of privacy in the van because Jimenez stated that he was to deliver the van to Jose Senior, meaning Petitioner, and he gave the keys to the van to Petitioner. (Doc. No. 1-1 at 90-91; Doc. No. 1-2 at 7). He contends that the van was locked, that officers had to use the key taken from him to open it, and that the van was taken from the residence without consent. (Doc. No. 1-1 at 91-99; Doc. No. 1-2 at 6).

Here, counsel's decision not to file a motion to suppress was objectively reasonable because such a motion would have failed. Agents knew that Petitioner and Fernando were suspected of trafficking drugs and their surveillance established that the two men had rented a car and picked up Jimenez from the airport. After Jimenez arrived at Fernando's house, he accepted delivery of a red minivan that was towed to the residence. The three men then left the house and proceeded to discard a grocery bag containing wrappings for a kilogram of cocaine in a garbage bin at a car wash. These facts established not only reasonable suspicion to stop the vehicle in which the three men were driving and question them, but also probable cause to stop the vehicle and arrest them since a prudent person would view these facts as showing that the

men had committed or were about to commit a drug-trafficking offense.  See United States v. Christian, 544 F. App'x 188, 190 (4th Cir. 2013) (holding there was probable cause of drug activity).  Additionally, there also probable cause to stop the car and arrest Fernando, who was driving, based on his outstanding probation violation warrants.  See United States v. Thompson, 245 F. App'x 279, 281 (4th Cir. 2007) (holding there was probable cause to stop vehicle where there was an outstanding warrant for the vehicle's owner).

With respect to the search of the minivan, Petitioner lacked standing to challenge the search.  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  Rakas v. Illinois, 439 U.S. 128, 134 (1978).  A person must have a "legitimate expectation of privacy" in the place searched to have standing to challenge a search.  Id. at 142.  Thus, a defendant must submit persuasive evidence of a privacy interest in a vehicle to have standing to assert a Fourth Amendment challenge to a search of the vehicle.  United States v. Manbeck, 744 F.2d 360, 374 (4th Cir. 1984).  Even a car's passenger "normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object."  United States v. Carter, 300 F.3d 415, 421 (4th Cir. 2002).

Here, Petitioner had no standing to challenge the search of the minivan because, rather than asserting a privacy interest in the vehicle, he specifically disavowed any knowledge of it.  (Crim. Case No. 3:11-cr-386-FDW-DSC-1, Doc. No. 190 at 104-05: Trial Tr. IV).  Additionally, the drug dog's alert to the vehicle established probable cause to search it.  See United States v. Koon Chung Wu, 217 F. App'x 240, 245 (4th Cir. 2007) (an alert by a trained dog is generally sufficient to establish probable cause).

Finally, Petitioner has not alleged a privacy interest in Fernando's residence, and Griffin, who lived at the residence, gave written consent to officers to search the house. See (Id., Doc. No. 177 at 122-25: Trial Tr. III; Doc. No. 191 at 96-97: Trial Tr. VI). Accordingly, Petitioner has not shown that the search of the residence impinged on his Fourth Amendment rights. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (holding that it is well settled that a warrantless search does not violate the Fourth Amendment where consent is given).

In sum, Petitioner has not shown that counsel was deficient for failing to file a motion to suppress. Additionally, because Petitioner has not shown that a motion to suppress would have been successful, he cannot establish deficient performance or prejudice based on counsel's failure to file such a motion. See Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) (holding that "[f]ailure to raise a meritless argument can never amount to ineffective assistance"). Thus, Petitioner's ineffective assistance of counsel claim based on counsel's failure to file a motion to suppress is without merit.

3. Petitioner's general allegation of counsel's lackluster performance at trial.

Petitioner next argues that, during trial, counsel merely relied on the efforts of counsel for the co-defendant, but did not "initiate any meaningful objections," engaged in lackluster cross-examination of witnesses, and demonstrated a lack of knowledge regarding the basic facts of the case. (Doc. No. 1-1 at 115). He asserts that counsel failed to argue to the jury that the Government had not shown that he had committed an overt act in furtherance of the conspiracy. (Id. at 99). He also contends that counsel's closing argument was deficient. (Doc. No. 1-2 at 17). Petitioner does not identify any objections that counsel should have made, nor does he specify any basis for cross-examination that counsel did not pursue. He also fails to identify the alleged deficiencies in counsel's closing argument. Accordingly, his conclusory allegations of

counsel's "lackluster" performance are insufficient to show either deficient performance or prejudice.  See Dyess, 730 F.3d at 359-60.

Petitioner's argument that counsel should have argued that Petitioner did not commit an overt act in furtherance of the conspiracy is without merit.  First, the evidence at trial showed that Petitioner did commit overt acts in furtherance of the conspiracy.  In any event, the Government is not required to prove an overt act to establish a drug trafficking conspiracy under § 846.  See United States v. Shabani, 513 U.S. 10, 15 (1994).  In any event, defense counsel argued at trial that Petitioner did not have knowledge of the conspiracy or intent to join it and that Hardin's testimony was based on post-arrest information that could have been obtained "through the jailhouse grapevine."  (Crim. Case No. 3:11-cr-386-FDW-DSC-1, Doc. No. 180 at 78; 80-81: Trial Tr. VIII).  Because commission of an overt act was not an element of the offense, defense counsel was not deficient and Petitioner was not prejudiced based on counsel's failure to raise this argument.

4.   Petitioner's contention that counsel was ineffective for failing to argue that Petitioner's right to confrontation was violated.

Petitioner next contends that counsel was ineffective for failing to argue that Petitioner's right to confrontation was violated.  The Confrontation Clause "applies to 'witnesses' against the accused," those who provide testimony against him.  Crawford v. Washington, 541 U.S. 36, 51 (2004).  It protects against the admission of testimonial hearsay at trial where the witness is not present, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.  Id. at 59.  "The primary determinant of a statement's testimonial quality is 'whether a reasonable person in the declarant's position would have expected his statements to be used at trial . . . .'"  United States v. Dargan, 738 F.3d 643, 650 (4th Cir. 2013) (quoting

United States v. Udeozor, 515 F.3d 260, 268 (4th Cir. 2008)). The Confrontation Clause does not guarantee the right to call every potential witness against an accused, and it is subject to harmless error analysis. See United States v. Mouzone, 687 F.3d 207, 213 (4th Cir. 2012).

Petitioner asserts that counsel did not know until he was cross-examining the final witness that the Government's case had begun when a confidential source provided information that Petitioner and his son were illegally trafficking drugs. (Doc. No. 1-1 at 19-20; Doc. No. 1-2 at 2-3). He argues that this deprived him of the right to confront and cross-examine his accuser in violation of the Sixth Amendment. (Doc. No. 1-1 at 21-22). Petitioner's speculation that his counsel was unaware of this fact is belied by the nature of counsel's questioning, the Court's determination that a side-bar was not needed when the Government objected, as well as the fact that a reference to the confidential source was included in the affidavit supporting Petitioner's arrest warrant, which was attached to his criminal complaint. See (Crim. Case No. 3:11-cr-386-FDW-DSC-1, Doc. No. 180 at 247-48: Trial Tr. VIII).

At trial, the only evidence regarding the confidential source was brought out by defense counsel Lee on cross-examination and consisted merely of an agent's testimony that the investigation began based on a tip from a confidential source. (Id. at 247). Even if this could be considered testimonial evidence, because this information was solicited by the defense, any assertion that it violated Petitioner's right to confrontation would be invited error. See United States v. Herrera, 23 F.3d 74, 75-76 (4th Cir. 1994) (a criminal defendant may not complain of error that he invited). Moreover, any error would be harmless in light of the very limited nature of this evidence and the vast array of other evidence that was presented to establish Petitioner's guilt. Accordingly, Petitioner cannot show that counsel was deficient for failing to argue that

Petitioner's confrontation rights were violated, or that he was prejudiced by counsel's failure to raise this issue. See Strickland, 466 U.S. at 687-88, 694.

     5.   Petitioner's contention that counsel was ineffective for failing to file a motion to sever Petitioner's trial due to the admission of certain evidence against Jimenez.

Petitioner next contends that counsel was ineffective for failing to move to sever his trial from Jimenez's based on the Government's introduction of a video of a prior and unrelated traffic stop of Jimenez. (Doc. No. 1-1 at 100-11). Petitioner contends that admission of this evidence was devastating to his defense. (Id. at 103-04). Generally, defendants who are indicted together should be tried together. United States v. Chorman, 910 F.2d 102, 114 (4th Cir. 1990). "Joinder is highly favored in conspiracy trials." Id. Pursuant to Federal Rule of Criminal Procedure 14(a), a court may sever a defendant's trial if a joint trial will prejudice the defendant or the government. FED. R. CRIM. P. 14(a). The determination whether to sever a defendant is within the district court's discretion. See United States v. Lane, 474 U.S. 438, 473 n.12 (1986).

Here, Petitioner and Jimenez were indicted together for their involvement in the same conspiracy. (Crim. Case No. 3:11-cr-386-FDW-DSC-1, Doc. No. 42: Superseding Indictment). The vast majority of the evidence used to prove this conspiracy was admissible as to both defendants. Furthermore, the Court gave a limiting instruction when evidence of Jimenez's prior traffic stop was introduced. See (Id., Doc. No. 178 at 109-11: Trial Tr. V). The Court's final instructions also reminded jurors of this limitation. (Id., Doc. No. 180 at 45-46: Trial Tr. VIII). Under these circumstances, counsel was not deficient for failing to move to sever Petitioner's trial, as such a motion was unlikely to succeed. Additionally, in light of the limiting instructions given to the jury, Petitioner cannot show that he was prejudiced by the joint trial. See United States v. Brugman, 655 F.2d 540, 543 (4th Cir. 1981) (recognizing that to establish prejudice, a

movant must show more than a better chance of acquittal). Accordingly, his assertion of ineffective assistance for failure to move to sever the trial is denied.

In sum, because Petitioner has not established that counsel's performance was deficient and prejudiced him, all of his claims of ineffective assistance are denied. See <u>Strickland</u>, 466 U.S. at 687-88, 694.

**C. Petitioner's Claims Challenging the Sufficiency of the Evidence, Alleging a Fourth Amendment violation, and Challenging this Court's Failure to Hold an Inquiry of Counsel Hearing.**

In his next three claims, Petitioner challenges the sufficiency of the indictment and evidence, he alleges a Fourth Amendment violation, and he challenges this Court's failure to hold an inquiry of counsel hearing. Petitioner is procedurally barred from bringing these claims. A § 2255 motion is not a substitute for a direct appeal and is not an opportunity to re-try a criminal case. See <u>United States v. Linder</u>, 552 F.3d 391, 397 (4th Cir. 2009); <u>Murawski v. United States</u>, 179 F.2d 782, 783 (4th Cir. 1950) (holding that "[q]uestions as to the sufficiency of the evidence . . . must be raised by timely appeal from the sentence"). Claims of errors that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. See <u>Bousley v. United States</u>, 523 U.S. 614, 621-22 (1998); <u>United States v. Bowman</u>, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." <u>United States v. Mikalajunas</u>, 186 F.3d 490, 493 (4th Cir. 1999). To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional

dimension.  See United States v. Frady, 456 U.S. 152, 170 (1982).  To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014), cert. denied, 135 U.S. 1467 (2015). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent."  See Mikalajunas, 186 F.3d at 494.

Petitioner first argues that the evidence was insufficient to support the jury's verdict, asserting that there was no evidence that his presence at his son's residence was drug-related, nor was there any evidence that he committed an overt act in furtherance of the conspiracy.  (Doc. No. 1-1 at 24-47).  He also contends that the Indictment did not charge an element of the offense, namely that he committed an overt act in furtherance of the conspiracy, and that there was no evidence that he committed such an act or that he had the requisite mens rea.  (Id. at 31-32; 42-47).  Petitioner asserts that evidence against him was obtained in violation of his Fourth Amendment rights.  (Id. at 29-31; 48-99).  Finally, Petitioner argues that this Court did not respond to his July 23, 2012 letter, Doc. No. 74, which complained about Lee's representation, and that the failure to hold an inquiry of counsel hearing deprived him of due process and a fair trial.  (Id. at 14-23; 113-14).

All of these claims are procedurally barred by Petitioner's failure to raise these issues on direct appeal.  Petitioner has not alleged or shown cause or prejudice for the failure to raise these issues on direct appeal.  Significantly, he does not argue that his appellate counsel provided ineffective assistance.  Although Petitioner argues that the evidence was insufficient to convict him, he has not shown that he was factually innocent of the offense.  See Mikalajunas, 186 F.3d at 494.  The evidence presented at trial clearly showed his agreement to provide over five kilograms of cocaine to Graham for distribution and the steps he took with his son and Jimenez

to carry out this agreement.  Therefore, Petitioner has not shown cause, prejudice, or actual innocence to overcome the procedural bar, and these claims are dismissed.

In sum, Petitioner's second, third, and fourth claims are dismissed as procedurally barred.

**D. Petitioner's Claim that He is Entitled to a Reduction of Sentence Pursuant to Amendment 782 to the United States Sentencing Guidelines**

In his final claim, Petitioner seeks a sentence reduction under Amendment 782 to the United States Sentencing Guidelines.  (Doc. No. 1-2 at 18).  Petitioner's request is not cognizable in this proceeding, and it is moot in any event, as this Court already has denied relief under Amendment 782.  (Crim. Case No. 3:11-cr-386-FDW-DSC-1, Doc. No. 209: Order Denying Sentence Reduction).

In sum, Petitioner's fifth claim is without merit.

**IV.    CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2.    Petitioner's Motion to Amend/Correct Motion to Vacate, (Doc. No. 7), is **DENIED**.

3.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473,

484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Frank D. Whitney
Chief United States District Judge